**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-01873-RBJ-MEH

MALIBU MEDIA, LLC,

    Plaintiff,

v.

LINDSAY MANESS,

    Defendant.
_____/

**MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

**I.    INTRODUCTION**

This is the most blatant attempt to manufacturer attorneys' fees that undersigned, and likely this Court, has or will ever see.

**II.    FACTS AND PROCEDURAL POSTURE**

    **A. Plaintiff Brought the Claim in Good Faith**

From February 13, 2012 until April 18, 2012, a person using Mr. Maness's internet service connected to IPP, Limited's server forty (40) different times and each time that person distributed a piece of one of Plaintiff's copyrighted movies.  In total, seven (7) of Plaintiff's copyrights were repetitively infringed.  Mr. Maness brought his computer, hard drives and backup storage devices to a judicial status conference held on October 10, 2012.  He presented evidence, beyond a mere assertion, that his computer had been hacked.  And, he claimed that whoever hacked into his computer was the infringer.

1

### B. The Parties Settled for a Walk-Away Prior to Mr. Kerr Being Retained

Immediately following the status conference, undersigned advised Mr. Maness that Plaintiff would not likely pursue its case against Mr. Maness. The parties' left the Courthouse with the understanding that undersigned would speak to Plaintiff to confirm. An hour or so later, after speaking with Plaintiff, undersigned called Mr. Maness and the parties orally agreed to settle the matter. The terms were simple and exceedingly fair to Mr. Maness: (1) neither party would pay the other anything; and (2) Mr. Maness would secure his internet. Mr. Maness *expressly* agreed to these terms. Indeed, Mr. Maness seemed exceedingly pleased, relieved and excited to put this matter behind him. Plaintiff anticipated memorializing the oral settlement agreement.

### C. Counsel For Mr. Maness Attempts to Scuttle the Settlement and Performs Unnecessary Work In A Transparent Attempt to Manufacturer Attorneys' Fees

Less than two full days after the scheduling conference, on October 12, 2012, undersigned called Mr. Maness who *again* agreed to the material terms of a settlement agreement: (1) neither party would pay the other anything; and (2) Mr. Maness would secure his internet. He also advised undersigned to send the Settlement Agreement to his newly retained counsel, David Kerr. At that time, a written settlement agreement was being drafted to memorialize the settlement.

In comes David Kerr whose obvious intention was to scuttle the settlement so that he could manufacturer a claim for attorneys' fees. Toward that end, via letter, sent to undersigned via email at 2:33 on October 12, 2012, Mr. Kerr attempts to repudiate the oral settlement agreement: "my client has evaluated your latest settlement offer and concluded it is unacceptable." *See* Exhibit A. "[I]t is my client's firm position that he is under no obligation to conduct discovery on behalf of Plaintiff," [in other words,] Mr. Kerr asserts that Mr. Maness

need not identify the person using his internet to steal Plaintiff's property. Finally, the confidentiality/non-disclosure agreement is unacceptable." *Id.* "The only offer my client will accept is an immediate dismissal with prejudice of all claims against him." *Id.* "Please note I have been authorized to prepare a response in anticipation of the extended October 17, deadline." *Id.* "Please note that I have already begun efforts on this response and have further been directed by my client to request both costs and attorneys' fees under all applicable legal and equitable theories."

Thirteen minutes after receiving Mr. Kerr's letter, at 2:46 on Friday, October 12, 2012, undersigned sent Mr. Kerr an email stating "I originally asked that he pass along any information he possessed or came into possession of with respect to the true infringer, which he deemed unacceptable. As such, the undersigned advised Mr. Kerr Plaintiff would not include that language in any proposed settlement." *See* Exhibit B. Fifteen minutes later, at 3:01, Mr. Kerr wrote "[t]hank you for the quick response and I appreciate the clarification. I look forward to your client's response, however, please note that we are proceeding with our October 17th response as planned." Twenty-seven minutes later, at 3:28, undersigned wrote Mr. Kerr "I'm not sure why your client, who was very relieved when I spoke with him this morning at the possibility of putting this matter behind him, is now opposed to the proposed settlement terms. There would be no admission of guilt with the only requirement being an obligation to ensure his wifi remains secured. Of course, upon execution, we would file notice of voluntary dismissal with prejudice. Please relay this offer to your client. I will not be available this weekend to discuss the matter further." At 3:47, Mr. Kerr wrote "This is the first I have heard about any obligations to secure his wi-fi. The only terms that were conveyed to me were: 1) an obligation to provide information, if known, as to the identity of the infringer, if one ever even existed; and

2) a confidentiality/non-disclosure agreement. My client doesn't have any information regarding the first condition so the point is moot. As to the second condition, upon reflection, my client decided he was not amenable to such a provision. The ability to publically maintain his innocence -- whether through his own statements or by a declaration from the Court -- is important and not negotiable. Perhaps you could email me the specific proposed terms for consideration so were [sic] are not moving forward in an *ad hoc* manner. Regardless, we will be proceeding in the preparation of our response due next Wednesday."

At 4:43, undersigned wrote Mr. Kerr that "I will prepare a draft agreement to continue this good faith settlement effort; however, I would advise that the confidentiality provision is limited to the settlement agreement's terms and would not preclude Mr. Maness from proclaiming his innocence in any way. That, coupled with a dismissal with prejudice should should (sic) alleviate any new found complications."

Being unwilling to continue to play Mr. Kerr's game of gotcha with respect to his transparent attempt to manufacture attorneys' fees, on Monday October 15, 2012, at 11:26 a.m., based upon his assertion that "[t]he only offer my client will accept is an immediate dismissal with prejudice of all claims against him," Plaintiff filed a Notice of Voluntary Dismissal. *See* CM/ECF 20. On October 16, 2012, the Court entered an order terminating the case. *See* CM/ECF 21. The Notice of Dismissal was *without* prejudice. Nevertheless, since it was the second voluntary dismissal, pursuant to Fed.R.Civ.P. 41(a)(1)(B), the dismissal acted as "an adjudication on the merits," in Defendant's favor. On Wednesday, October 17, 2012, Mr. Kerr sent undersigned an email attaching a copy of Mr. Maness's Motion to Dismiss. In response, undersigned advised Mr. Kerr that Defendant had been voluntarily dismissed and that the suit has been terminated. Later that day, Mr. Kerr filed the Motion to Dismiss into the terminated

case. *See* CM/ECF 22. On October, 18, 2012, the Court entered an order denying Mr. Maness' Motion to Dismiss as moot. *See* CM/ECF 23. The subject motion for attorneys' fees follows.

### D. Opposing Counsel Took This Case On a Contingency With the Intent of Manufacturing Attorneys' Fees

On page 38 of Defendant's Motion, opposing counsel alludes to the motivations of his unreasonable actions. Namely, since the matter was going to settle for nothing, his only hope of getting anything out of this case was to manufacturer a claim for attorneys' fees: "[f]irst while the representation of Mr. Maness was not *pro bono*, Mr. Maness is not in a financial position to pay all or even a majority of the attorney fees and costs for his defense. Therefore, Mr. Maness's only hope of fully or partially recouping his fees and costs was to prevail." Mr. Kerr took this case either expressly or implicitly on a contingency via an agreement predicated on his belief that he could game the system to get Plaintiff to pay him money.

### E. No Rational Lawyer Would Advise a Defendant to Spend 1000s of Dollars to Draft an Unnecessary Motion When the Parties Had Settled For a Walk Away

The parties had reached an oral settlement agreement prior to Mr. Kerr being engaged and before Mr. Kerr did any work. Absent an ulterior motive, what self-respecting lawyer would advise a defendant to spend 1000s of dollars to draft a motion to dismiss a complaint that Plaintiff had already agreed to dismiss with prejudice? The only way to make sense out of these facts is that Mr. Kerr is manufacturing attorneys' fees or pursuing a vendetta.

### F. Opposing Counsel Has Consistently Acted Unreasonably

On August 1, 2012, during Mr. Kerr and undersigned's first teleconference, related to another Doe Defendant, Mr. Kerr advised undersigned that he thought all of Plaintiff's suits were baseless. Further, that he planned to investigate the ethics of the work that undersigned is doing and advised undersigned that he would report undersigned to the Bar should he deem it

necessary. This threat rubs right up against Colorado Bar Rule 4.5, which states "[a] lawyer shall not threaten criminal, administrative or disciplinary charges to obtain an advantage . . ."

Prior to my having any dealings with Mr. Kerr, in May of 2011, Mr. Kerr called another one of Malibu Media, LLC's attorneys, M. Keith Lipscomb, who was then representing Patrick Collins, Inc. According to accounts from Mr. Lipscomb, who indicated to undersigned that he would provide a declaration attesting to the following facts, if requested, Mr. Kerr called Mr. Lipscomb's office, and in an outrageous and bellicose manner, screamed at and berated a legal assistant, Alejandra Albuerne. In his conversation with Ms. Albuerne, and in subsequent email correspondence with Mr. Lipscomb, Mr. Kerr expressly threatened to report Mr. Lipscomb to the Florida Bar. Refusing to be intimated, and having nothing to hide, Mr. Lipscomb filed a Bar complaint against Mr. Kerr. The Colorado Bar Complaint was assigned number Case Number 11-1443. Upon learning that a Bar Complaint was filed against him, Mr. Kerr advised Mr. Lipscomb that "[a]s I stated, I do not now, nor will I represent any client's adverse to your interests, or those of your client Patrick Collins, Inc." As a result of this promise, Mr. Lipscomb did not further pursue the Bar Complaint.[1]

### III.   LEGAL STANDARD

Pursuant to 17 U.S.C. § 505, a court "may" award "reasonable" attorneys' fees to a prevailing party. "District courts are to use their discretion in awarding attorney's fees and costs to the prevailing party." *Fogerty v. Fantasy, inc.*, 510 U.S. 517, 524 n. 11 (1994). "Under the abuse of discretion standard, 'a trial court's decision will not be disturbed unless the appellate

---

[1] Significantly, Mr. Kerr had been feeding a Florida attorney, Bradford Patrick, referrals. Bradford Patrick, who is also a member of the Colorado Bar, would then file motions purporting to represent *all* of the Doe Defendants in a particular case. In response, Mr. Lipscomb served Mr. Patrick with a motion for sanctions. In response, Mr. Patrick withdrew that portion of his template motions wherein he pretended to represent all of the parties.

court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Palladium Music, Inc. v. Eatsleepmusic, Inc.*, 398 F.3d 1193 (10th Cir. 2005) (upholding the denial of attorneys' fees to a prevailing defendant.) In *Fogerty*, the "Court suggested several non-exclusive factors for the district court to consider, including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* "These 'factors may be used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner."

A. <u>Plaintiff's Claim Was Not Frivolous</u>

From February 13, 2012 until April 18, 2012, a person using Mr. Maness's internet service connected to IPP, Limited's server forty (40) different times and each time that person distributed a piece of one of Plaintiff's copyrighted movies. In total, seven (7) of Plaintiff's copyrights were repetitively infringed. These are indisputable facts that warranted Plaintiff's case against Defendant. Accordingly, this factor weighs against awarding attorneys' fees. *See Meshwerks v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, FN11 (10th Cir. 2008) (denying Defendant's motion for attorneys' fees on the basis that the claim was not frivolous and that Meshwerk's motivation was sincere.

B. <u>Plaintiff's Motivation for Bringing the Suit</u>

Plaintiff works hard to create copyrighted works and to distribute these works through its subscription based website, www.x-art.com. As this Court knows from prior matters, Plaintiff uses all of the means available to it to deter infringement, including sending DMCA notices and bringing these suits. Further, Plaintiff is genuinely seeking to deter infringement. And, as this

7

Court has noted, undersigned has cooperated with the Court to keep costs low for all concerned. With this in mind, Plaintiff respectfully suggests that its motivations for bringing these suits, namely to deter infringement, and to seek reasonable compensation for theft of Plaintiff's property, is proper. Accordingly, this factor weighs against awarding attorneys' fees. *See Meshwerks v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, FN11 (10th Cir. 2008) ("Meshwerk's motivation was sincere;" therefore, no attorneys' fees.)

C. <u>Plaintiff's Actions Were Objectively Reasonable</u>

Defendants routinely lie to Plaintiff by claiming to be wifi hacked and by asserting that none of their computers have a BitTorrent Client on it. In the most famous of all these cases, *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487 (1st Cir. 2011), the Defendant threw away his computer and lied about his infringement until he broke down literally on the stand and admitted to perjuring himself during his deposition. Given how easy it is to destroy evidence, and commit perjury, Plaintiff should not be obligated to investigate every computer that a defendant claims does not have the infringing content. And, if Plaintiff had to believe every such defendant then the dumps would be filled with computers because it is cheaper to buy a new one than pay a reasonable settlement for stealing multiple movies in violation of the Copyright laws. Notwithstanding the foregoing, Plaintiff does listen to exculpatory evidence and indeed welcomes and invites it. Plaintiff's process worked in this case. Prior to Mr. Kerr having ever being retained, and immediately upon seeing real evidence that Defendant's computer was hacked, Plaintiff agreed not to pursue its claim against Defendant. Plaintiff could have pushed the matter forward, given the length and quantum of infringement, Plaintiff still had a good case. But, Plaintiff gave Defendant the benefit of the doubt and agreed to end the dispute early – before either party had to invest in any substantial way into the suit. When a party acts

8

reasonably during settlement negotiations, this fact weighs against awarding attorneys' fees. *See Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467, 473 (2d Cir. 467) (refusing to award a plaintiff attorneys fees based in large part because the defendant had made reasonable settlement offers.)

> D.  Defendant's Actions Were Objectively Unreasonable

The record demonstrates that at every turn Mr. Kerr was seeking to run up fees on Plaintiff despite knowing Plaintiff was not going to pursue Defendant.  If the Court doubts this obvious statement then Plaintiff respectfully requests that it conduct and evidentiary hearing and allow undersigned to question Mr. Kerr and Defendant about their strategy toward this end.  Indeed, Plaintiff acquiesced on every point in the settlement agreement.  Defendant wanted to be voluntarily dismissed with prejudice.  Plaintiff said, "of course."  There was nothing to do.  Why spend 1000s of dollars on unnecessary legal work under these circumstances if not to play a game of gotcha.  The answer is clear: the only way Mr. Kerr was going to make any money was if he got an attorneys' fee award.  To try and make that happen, he acted unreasonably.  To reward this type of behavior would only discourage reasonable settlement agreements and encourage the vexatious multiplication of proceedings.  If 100 lawyers were asked if they would advise their clients to spend money on an expensive motion to dismiss when the plaintiff wanted no money, and nothing of consequence from them to settle the matter.  Not one would say yes, and is plainly absurd that Mr. Kerr so advised his client here.  At best, Mr. Kerr would have been justified in asking for another enlargement of time to respond to give the parties time to focus on memorializing the terms of their binding oral settlement agreement.  Instead, Mr. Kerr steadfastly continued to draft a totally unnecessary motion.

Defendant urges this Court to use the loadstar method to calculate his fees.  The loadstar method focuses on the reasonableness of the rate charged.  However, "the emphasis on

ascertaining a 'reasonable' fee also suggests "[t]he amount of such fee (as distinguished from the reason for its award. . . ) should be based upon the reasonable value of the services rendered." *Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 151 (2d Cir. 2001). Here, Mr. Kerr did not obtain any relief for Defendant that Plaintiff had not already agreed to give to Mr. Defendant.  His efforts were unnecessary and therefore he should not be compensated for them.

      E. Awarding Attorneys' Fees Would Be Inconsistent with the Goals of the Copyright Act

The Copyright Act was specifically amended through the Digital Theft Deterrence Act of 1999 to deter on-line infringement.  *See Tenenbaum*, supra, citing the Congressional Record. Enforcing one's rights against on-line infringement can only be done by suing the subscriber of an IP Address.  Plaintiff did not push this matter beyond the point where it had a good faith basis for believing Defendant committed the infringement.  Awarding a defendant his or her attorneys' fees, despite a plaintiff dropping a claim as soon as it became suspect, would be inconsistent with the Digital Theft Deterrence Act's express policy of deterring on-line infringement.  Moreover, the amount of fees sought by Defendant is totally outrageous.  Plaintiff has *never* had a settlement as large as the fees Defendant is seeking.  Mr. Kerr did nothing to assist Defendant in this matter.  The case was settled and all Mr. Kerr did was intervene to scuttle a simple settlement in the hopes of extracting attorneys' fees from Plaintiff.  His prayer should be summarily rejected.

      F. The Parties' Oral Settlement Agreement was Binding and Concluded the Matter

It is axiomatic that "oral settlement agreements are binding. *Brackens v. Sedgwick Claims Management Services, Inc.*, 2008 WL 906121 (D. Col. 2008).

Here, the parties orally agreed, twice, that neither party would pay the other money. This agreement should be enforced.

## IV.     CONCLUSION

For the forgoing reasons, Defendant's motion should be denied.

Dated: November 23, 2012

>  Respectfully submitted,
>
> By: /s/*Jason Kotzker*
> Jason Kotzker
> jason@klgip.com
> KOTZKER LAW GROUP
> 9609 S. University Blvd., #632134
> Highlands Ranch, CO 80163
> Phone: 303-875-5386
> *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

> /s/ *Jason Kotzker*
> Jason Kotzker